ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOSÉ ANER RIVERA IRIZARRY, Recurrida, v. ARLENE MILAGROS ESCOBALES VÉLEZ, Peticionaria, | KLCE202400460 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce. Civil núm.: PO2023RF01142. Sobre: Divorcio, ruptura irreparable. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece la parte peticionaria, señora Arlene Milagros Escobales Vélez, y nos solicita que revisemos y revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 14 de febrero de 2024, notificada el 7 de marzo de 2024. En lo pertinente, el foro primario imputó a la peticionara capacidad para generar un ingreso neto mensual de $870.40.

Por los fundamentos expuestos a continuación, expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida.

I

En lo concerniente a la controversia ante nuestra consideración, el 16 de enero de 2024, la señora Escobales presentó una moción mediante la cual solicitó que no se le imputara ingreso conforme a lo establecido en el Art. 11 de la *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico,* Reglamento Núm. 8529 del 30 de octubre de 2014[1] (Guías Mandatorias). Adjuntó a su moción un certificado médico firmado por el neurólogo Dr. Jenaro Scarano García el 16 de enero de

---

[1] *Véase*, apéndice del recurso, a las págs. 4-5.

Número identificador

SEN2024_____

2024[2]. El doctor certificó que la menor M.R.E., cuya pensión alimentaria se dilucidaba, era una paciente de 13 años, que se atendía en su oficina desde el 2010, a causa de su perlesía cerebral, retraso global en el desarrollo[3] y epilepsia. Además, expuso que la niña no ambulaba y recibía tratamiento *con Keppra* y *Topamax*[4]*.* Finalmente, certificó que la paciente era totalmente dependiente de la señora Escobales para su manejo, cuidados de salud, además de para su aseo y alimentación.

Ante ello, el 17 de enero de 2024, el Tribunal de Primera Instancia refirió el asunto al examinador de pensión alimentaria (Examinador)[5].

El 26 de enero de 2024, la peticionara presentó una nueva moción en la cual detalló las condiciones de la menor y los retos que estos representaban para su cuidado[6]. A su vez, adujo que los cuidados requeridos por la menor habían sido brindados por ella, quien era su custodia desde hacía 13 años, y debían continuar siendo ofrecidos por ella. Planteó que la alternativa de contratar una enfermera para atender las necesidades de la menor no resultaba costo efectivo. Ante ese panorama, reiteró su solicitud de que no se le imputara ingreso alguno. En apoyo a su solicitud, adjuntó una nueva certificación médica suscrita por el Dr. Jenaro Scarano García[7], en la que este reiteró las condiciones de la menor y su dependencia de la madre.

El 30 de enero de 2024, el Tribunal de Primera Instancia ordenó al Examinador que señalara la vista sobre la pensión alimentaria y

---

[2] *Véase*, apéndice del recurso, a la pág. 6.

[3] "Global developmental delay, as its name implies, is diagnosed when an individual fails to meet expected developmental milestones in several areas of intellectual functioning. The diagnosis is used for individual younger than 5 year who are unable to undergo systematic assessments of intellectual functioning, and thus the clinical severity level cannot be reliably assessed". American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-5-TR), 5th ed. Washington DC, American Psychiatric Association Publishing (2022), pág. 35.

[4] Los referidos medicamentos son anticonvulsivos y antiepilépticos. *Véase*, https://www.drugs.com/search.php?searchterm=Keppra&a=1 (última visita 25 de junio de 2024) y https://www.drugs.com/search.php?searchterm=topamax 1 (última visita 25 de junio de 2024).

[5] *Véase*, apéndice del recurso, a la pág. 8.

[6] *Íd.*, a las págs. 11-17.

[7] *Íd.*, a la pág. 18.

determinara la capacidad de ambas partes de conformidad con el reglamento aplicable[8]. Celebrada la vista, el 14 de febrero de 2024, el Examinador emitió sus determinaciones de hecho y su recomendación[9]. En síntesis, declaró con lugar la solicitud de alimentos, e impuso al padre no custodio una pensión alimentaria provisional. Además, le imputó a la peticionaria capacidad para generar un ingreso neto mensual de $870.40[10].

El 7 de marzo de 2024, el foro primario notificó una resolución mediante la cual adoptó las recomendaciones del Examinador[11].

Inconforme con la determinación, el 20 de marzo de 2024, la parte peticionaria presentó una moción de reconsideración, a la vez que una solicitud de determinaciones adicionales de hecho y de derecho[12]. En esencia, adujo que durante la vista celebrada el 14 de febrero de 2024, el Examinador no resolvió la petición de la señora Escobales en cuanto a la imputabilidad de ingresos de conformidad con el citado Art. 11 de las Guías Mandatorias. Sostuvo que el Examinador se limitó a expresar que de las certificaciones médicas presentadas no surgía la incapacidad para trabajar de la señora Escobales. Señaló que la resolución mediante la cual se acogieron las recomendaciones del Examinador omitía declaraciones esenciales de la señora Escobales, en apoyo de su petición. Además, expresó que se omitía información requerida por uno de los artículos de las Guías Mandatorias al amparo del cual el Examinador emitió su determinación; en específico, el Art. 12(1)(b) de las Guías Mandatorias.

El 20 de marzo de 2024, el Tribunal de Primera Instancia refirió la moción de reconsideración al Examinador[13]. El 26 de marzo de 2024, este emitió una recomendación de que se declarase sin lugar. Reafirmó que no se había demostrado impedimento alguno para que la señora Escobales

---

[8] *Véase*, apéndice del recurso, a la pág. 20.

[9] *Íd.*, a las págs. 22-26.

[10] Ello, de conformidad con los artículos 10.1(b) y 12.1(b)(2) de las *Guías Mandatorias*.

[11] *Véase*, apéndice del recurso, a las págs. 27-29.

[12] *Íd.*, a las págs. 30-41.

[13] *Íd.*, a la pág. 42.

trabajara y tampoco que se realizaran gestiones suficientes dirigidas a buscar un centro adecuado para la menor. En esa misma, fecha el Tribunal de Primera Instancia acogió la recomendación del Examinador y declaró sin lugar la moción de reconsideración[14].

Aún inconforme, el 24 de abril de 2024, la señora Escobales presentó este recurso y formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia, al acoger la recomendación del EPA en su acta-informe, sin esta resolver la petición de inimputabilidad de ingresos al amparo del artículo 11 (1) (b) de la Guías mandatorias, por interpretación errónea del EPA.
>
> Erró el Tribunal de Primera Instancia, al acoger la recomendación del EPA en su acta-informe, a pesar de estas no incluir determinaciones de hechos de las certificaciones médicas de la menor M.R.E, las cuales son indispensables para resolver la controversia conforme al artículo 11 (1) (b) de la Guías mandatorias.
>
> Erró el Tribunal de Primera Instancia, al acoger la recomendación del EPA en su acta-informe, a pesar de la negativa del EPA en consignar los elementos requeridos en el artículo 12 (1) (B) (2) de la Guías mandatorias, totalmente contrario a derecho[15].

(Énfasis omitido).

El 3 de mayo de 2024, la peticionaria presentó una moción mediante la cual solicitó autorización para presentar la transcripción de la prueba oral. Tras varias incidencias procesales, el 7 de junio de 2024, emitimos una resolución mediante la cual dimos por estipulada la transcripción de la prueba oral. En virtud de ello, la parte peticionaria presentó la transcripción de la prueba oral el 12 de junio de 2024.

Por su parte, el 21 de junio de 2024, el recurrido señor José A. Rivera Irizarry presentó su oposición a la expedición del auto de *certiorari*.

Con el beneficio de la comparecencia de las partes, resolvemos.

---

[14] La referida determinación fue notificada a las partes el 26 de marzo de 2024. *Véase*, apéndice del recurso, a la pág. 2.

[15] Cabe aclarar que a pesar de que a lo largo del presente recurso y de los escritos de la peticionaria se ha referido a los Artículos 11 y 12 de las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico,* Reglamento Núm. 8529 del 30 de octubre de 2014, el reglamento vigente es las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico*, Reglamento Núm. 9535 del 15 de febrero de 2024. No obstante, la lectura de los Artículos 9 y 10 de este último reglamento son equivalentes a los Artículos 11 y 12 citado por la peticionaria. En atención a ello, en adelante, nos referiremos al reglamento vigente.

II

A

De ordinario, aquel que presenta un recurso de *certiorari* pretende la revisión de asuntos interlocutorios, que han sido dispuestos por el foro primario en el transcurso y manejo del caso. Por tanto, distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Por su lado, la Regla 52.1 de las de Procedimiento Civil, delimitó los asuntos que este Tribunal puede revisar mediante el recurso de *certiorari*. A saber:

.        .        .        .        .        .        .        .

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y **por excepción** a lo dispuesto anteriormente, **el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia** cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

.        .        .        .        .        .        .        .

32 LPRA Ap. V, R. 52.1. (Énfasis nuestro).

De otra parte, precisa señalar que la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento

de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción en los asuntos interlocutorios ante la consideración del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986).

B

El Tribunal Supremo de Puerto Rico ha reiterado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida y a la solidaridad familiar. Por tanto, los menores tienen un derecho fundamental a recibir alimentos. *Díaz Rodríguez v García Neris*, 208 DPR 706, 717-718 (2022); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623,632 (2011); *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 738 (2009). Con ello como base se promulgaron las *Guías mandatorias para fijar y modificar las pensiones alimentarias en Puerto Rico*,

Reglamento Núm. 9535, vigente desde el 24 de febrero de 2024. El referido reglamento tiene como propósito establecer y determinar las pensiones alimentarias de los alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos, que faciliten el cómputo de la cuantía de la obligación alimentaria.

En lo pertinente a la controversia ante nos, sobre los casos en los que **no** se imputarán ingresos, en su Art. 9, el Reglamento 9535 enumera los siguientes:

> 1. Cuando la persona custodia o la no custodia demuestre que no puede trabajar porque su condición de salud o incapacidad se lo impide. En los casos en que se presente evidencia de que la persona está incapacitada para producir ingresos, se considerará como ingreso la cantidad, si alguna, que reciba la persona por concepto de beneficios por incapacidad y cualquier otro ingreso que se demuestre.
>
> 2. **Cuando la persona custodia no ejerza una profesión u oficio y demuestre que es porque tiene que permanecer al cuidado de uno o más de sus hijos. En estos casos, la persona custodia debe demostrar que: (1) no puede ser sustituida par otra persona que cuide al menor o (2) que, a pesar de que otra persona puede cuidarlos, la proporción que la persona custodia debe aportar por concepto de cuido, no le permitiría generar un ingreso que, comparado con el gasto, represente un beneficio económico para ella y su familia.**

(Énfasis nuestro).

De otra parte, el Art. 10(b)(2) del Reglamento 9535, establece que en los casos en los que cualquiera de las partes no pueda trabajar a tiempo completo porque es necesario que permanezca al cuidado de cualquiera de sus hijos o hijas por ser la persona custodia de estos o estas, el juzgador tomará en consideración lo que resulte mayor entre el ingreso mensual que la persona obtenga de cualquier trabajo u oficio al cual se dedique, conforme con las disposiciones federales o estatales sobre salario para dicho trabajo u oficio o el salario mínimo federal prevaleciente en Puerto Rico, a base de no menos de veinte (20) horas y no más de treinta (30) horas semanales. A su vez, exige que, al momento de aplicar la excepción de este inciso, el juzgador considere y consigne en su resolución, orden o sentencia, entre otros elementos, los siguientes:

.        .        .        .        .        .        .        .

(a) la edad del menor; (b) el horario de clases o de cualquier actividad a la que debe acudir el menor; (c) la disponibilidad de empleo que tiene la persona según su preparación académica; (d) la edad de la persona; (e) el área geográfica donde resida la persona a la cual se le imputará el ingreso; (f) el horario durante el cual debe permanecer al cuidado de sus hijos; (g) si la persona tiene a su cargo hijos con necesidades especiales; (h) el hecho de que la persona custodia del caso no trabaje porque, durante o antes del proceso para el establecimiento o la revisión de la pensión alimentaria, acordó con la persona no custodia del caso, quedarse al cuidado del alimentista y no desempeñar profesión u oficio alguno; (i) si la proporción que la persona debe aportar por concepto de cuido le permite acceder a un trabajo a tiempo completo que le permita generar un ingreso que, comparado con el gasto, represente un beneficio económico para ella y su familia.

.        .        .        .        .        .        .        .

### III

En síntesis, la parte peticionaria señala que el Tribunal de Primera Instancia erró al acoger la recomendación del Examinador en su acta-informe. En particular, sostiene que el foro primario incidió al no resolver la petición de inimputabilidad de ingresos al amparo del Art. 9(2) de la Guías Mandatorias. También, al no emitir determinaciones de hechos relacionadas a las certificaciones medicas presentadas, que establecían que la menor M.R.E dependía totalmente de su madre. Finalmente, mediante su tercer señalamiento, sostuvo que el tribunal erró al acoger las recomendaciones del Examinador sin que este consignara los elementos requeridos en el Art. 10(b)(2) de las Guías Mandatorias.

Por su parte, el recurrido se limitó a argüir que el recurso debía ser desestimado. Ello, en tanto el acta-informe del EPA recomendaba la pensión con carácter provisional y al no haberse resuelto el asunto de la custodia compartida solicitada por él. No le asiste la razón.

Por estar intrínsecamente relacionados, discutiremos los primeros dos errores señalados por la peticionaria de manera conjunta.

Evaluado el expediente, la transcripción de la prueba oral y las posturas de las partes litigantes al amparo del derecho aplicable, colegimos que el Tribunal de Primera Instancia erró al acoger el informe del Examinador. Surge del informe-acta emitido por el Examinador que este analizó la capacidad física, emocional y mental de la señora Escobales

para generar ingresos, no obstante, obvió las declaraciones de esta y las certificaciones médicas, pronunciadas por el neurólogo de la menor, las cuales establecían que esta dependía completamente de la madre custodia.

Mediante la moción presentada el 16 de enero de 2024, la peticionaria solicitó que se decretase la inimputabilidad de ingresos de la madre custodia al amparo del Art. 9(2) de las Guías Mandatorias. Según discutimos, el referido artículo requiere que la parte solicitante, que no ejerza una profesión u oficio, demuestre que tiene que permanecer al cuidado de una o más de sus hijas. A su vez, especifica que en estos casos la persona custodia debe demostrar que no puede ser sustituida por otra persona que cuide a la menor o que, a pesar de que otra persona puede cuidarla, la proporción que la persona custodia debe aportar por concepto de cuido no le permitiría generar un ingreso, el cual, comparado con el gasto, represente un beneficio económico para ella y su familia.

Surge del informe-acta del Examinador que la señora Escobales declaró que la menor M.R.E de 13 años nació con perlesía cerebral, por lo que no puede valerse por sí misma y depende de su madre para todo lo relacionado con su cuido desde el 2009[16]. Además, surge que el padre no custodio trabaja como técnico automotriz para el Servicio Postal y la Guardia Nacional. De otra parte, cabe resaltar que la peticionaria presentó las certificaciones médicas de la menor, mediante las cuales su neurólogo estableció las condiciones de la menor, el cuidado requerido por esta y que la madre custodia era quien lo brindaba. En específico, que la joven no ambula, padece de epilepsia, no come por su cuenta y requiere apoyo para su aseo y cuido personal[17].

De la transcripción de la prueba oral surge que la menor requiere cuidado los 7 días de la semana, las 24 horas del día[18]. Ello, pues a la luz

---

[16] *Véase*, apéndice del recurso, a la pág. 23.

[17] *Íd.*, a las págs. 6 y 18.

[18] Si cuantificáramos esas labores, resultarían en un costo semanal de $1,596.00; ello, tomando como punto de partida el salario mínimo imperante en Puerto Rico o $9.50 por

de sus retrasos en el desarrollo global, tiene movimientos involuntarios que afectan su espina dorsal[19]. De igual modo, la señora Escobales declaró que la menor posee una edad cognitiva de nueve meses y padece de epilepsia. También, que es ella quien tiene conocimiento sobre cómo identificar las convulsiones que la condición le provoca a diario y el momento apropiado para acudir al hospital, en la medida en que las convulsiones representen un riesgo para la vida de M.R.E.[20] De otra parte, aclaró que, por las circunstancias provocadas por la pandemia y los temblores ocurridos en el 2020, solo recibe el servicio de *Homebound*[21], que provee el Departamento de Educación durante 2 horas a la semana[22].

El Examinador le imputó a la madre custodia la capacidad para generar un ingreso neto mensual de $870.40, al considerar que esta no padecía de impedimento físico, mental o emocional que le impidiera trabajar. Concluimos que el Examinador incidió al no considerar e incluir en sus determinaciones de hechos que una de las razones que permiten las Guías Mandatorias para no imputar ingresos es cuando el padre o, en este caso, la madre custodia, tiene que dedicarse al cuido de uno o más de sus hijos menores, lo cual fue demostrado tanto por las certificaciones médicas presentadas como por el testimonio no controvertido de la señora Escobales.

En cuanto al tercer señalamiento de error, al emitir su informe-acta el Examinador concluyó que la señora Escobales tenía la capacidad para generar un ingreso mensual neto de $870.40. Según discutimos, una vez se determina que una parte no puede trabajar a tiempo completo, es deber

---

hora (ello aumentará a $10.50 la hora, a partir del 1 de julio de 2024; a esos efectos, nos remitimos a la página electrónica del Departamento del Trabajo y Recursos Humanos de PR).

[19] *Véase*, transcripción de la prueba oral, a la pág. 29.

[20] *Íd.*, a la pág. 30.

[21] *Homebound* se refiere al servicio de educadores itinerantes en el hogar para la niñez con impedimentos severos. *Véase*, https://de.pr.gov/wpcontent/uploads/2023/01/EDU09,_OPUS_EE_Opusculo_de_Servicio _de_Maestro_Itinerante_en_el_Hogar.pdf (última visita el 26 de junio de 2024).

[22] *Véase*, transcripción de la prueba oral, a la pág. 27.

del juzgador considerar y consignar en su resolución los elementos requeridos en el Art. 10(b)(2) de las Guías Mandatorias.

No cabe duda de que la menor en este caso tiene necesidades especiales, generadas por su condición de perlesía cerebral, su incapacidad para ambular, su epilepsia, entre otras. De otra parte, si conforme al Art. 9(2) de las Guías Mandatorias, le adjudicáramos a la señora Escobales el máximo del tiempo de trabajo semanal o 30 horas semanales, el sueldo que ella podría generar ascendería a $285.00 semanales[23]. Ese precisamente sería el mínimo semanal que ella tendría que sufragar para que otra persona cuide de su hija. Tal resultado no genera beneficio económico alguno para ella o para la menor, por lo que, conforme al Art. 10(b)(2) de las Guías Mandatorias, procedía eximir a la señora Escobales de la imputación de un salario mensual.

Evaluada la totalidad del informe-acta acogido por el Tribunal de Primera Instancia, a la luz de la prueba desfilada y del derecho aplicable, concluimos que procede expedir el auto y revocar la determinación del foro primario. Así pues, concluimos que la señora Escobales pudo demostrar que le aplicaba el Art. 10(b)(2) de las Guías Mandatorias, por lo que la **pensión alimentaria provisional impuesta por el tribunal no tomará en consideración el ingreso mensual neto imputado a la peticionaria por el Examinador**.

IV

A la luz de los hechos y el derecho antes expuestos, expedimos el auto de *certiorari* y revocamos la *Resolución* emitida por el Tribunal de Primera Instancia el 7 de marzo de 2024.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Nuevamente, tomamos como punto de partida el salario mínimo imperante de $9.50 la hora.